1 | Michael C. Cohen, Esq., Bar No. 65487
2 | **LAW OFFICES OF MICHAEL C. COHEN**
  | 1814 Franklin Street, Suite 900
3 | Oakland, CA 94612
  | (510) 832-6436

4 | Attorneys for Carol Bland,
5 | Plaintiff

E-filing

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ADR

C08-02429 JL

CAROL BLAND,

                    Plaintiff,

vs.

JOHN E. POTTER, POSTMASTER
GENERAL, UNITED STATES POSTAL
SERVICE, DOES 1 TO 10,

                    Defendants.
_____/

Case No. _____

COMPLAINT FOR VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS
ACT OF 1964, AS AMENDED, 42
U.S.C. §2000e ET SEQ., SECTION
501 OF THE REHABILITATION ACT
OF 1973, AS AMENDED, 29 U.S.C.
§791 ET SEQ., AGE
DISCRIMINATION IN EMPLOYMENT
ACT OF 1967 (ADEA), AS
AMENDED, 29 U.S.C. §621 ET
SEQ.

**DEMAND FOR JURY TRIAL**

**GENERAL ALLEGATIONS**

Plaintiff, Carol Bland, alleges:

1. Plaintiff Carol Bland (hereinafter referred to as "plaintiff") is an African American adult woman, who at all relevant times alleged herein lived and worked as a Distribution Clerk at the agency's Processing and Distribution Center in

-1-

1 | Oakland, California.

2 | 2.   Plaintiff at all times alleged herein was over forty
3 | (40) years of age.

4 | 3.   Plaintiff is informed and believes and thereon alleges
5 | that at all times alleged herein United States Postal service is
6 | a corporation licensed to do business in the state of California
7 | and doing business in the state of California, county of Alameda.

8 | 4.   Plaintiff is informed and believes and thereon alleges
9 | that the United States Postal Service is an employer subject to
10 | the laws set forth in Title VII of the Civil Rights Act of 1964,
11 | as amended, 42 U.S.C. §2000e et seq., section 501 of the
12 | Rehabilitation Act of 1973, as amended, 29 U.S.C. §791 et seq.,
13 | Age Discrimination In Employment Act OF 1967 (ADEA), as amended,
14 | 29 U.S.C. §621 et seq.

15 | 5.   At all times relevant hereto, plaintiff's supervisor(s)
16 | and manager(s) were the agents/and or employees of defendant and
17 | DOES 1 to 10, inclusive, and each of them, in doing the things
18 | hereinafter alleged, were acting within the course and scope of
19 | such agency and/or employment.

20 | 6.   At all relevant times, defendant, and Does 1 to 10,
21 | inclusive, and each of them, knew or should have known that its
22 | supervising employees and or managerial employee(s), were
23 | discriminating against plaintiff and or harassing plaintiff
24 | because of plaintiff's race, and or sex, and or disability, and
25 | or perceived disability and or retaliating against plaintiff
26 | because of plaintiff's complaints of discrimination.

27 | 7.   The actions and failures to act of defendant and DOES

28 |
-2-

1 to 10, inclusive, and each of them, were severe and pervasive
such that it created a hostile work environment for plaintiff.

8.   Defendant and DOES 1 to 10, inclusive, and each of them,
despite knowledge and or adequate opportunity to learn of the
misconduct of its agents and or employees, retained said
defendants, agents and or employees in its service, and
thereafter adopted, approved and ratified the acts, omissions and
misconduct of said defendants.

9.   Plaintiff is ignorant of the true names and capacities
of the defendants sued herein as DOES 1 to 10, inclusive and
therefore sues these defendants by such fictitious names.
Plaintiff will amend this complaint to allege their true names
and capacities when ascertained.  Plaintiff is informed and
believes and thereon alleges that each of the fictitiously named
defendants is responsible as hereinafter shown for the
occurrences and injuries alleged in this complaint.

10. Plaintiff is informed and believes, and thereon alleges,
that at all times herein mentioned, each DOE, defendant named
herein was the agent and/or employee of United States Postal
Services and the remaining DOE defendants, and in doing the
things hereinafter alleged, was acting within the course and
scope of such agency and/or employment.

11.   The unlawful employment practices complained of herein
occurred in Alameda County, state of California.

12.   Plaintiff is a person protected by the statutes and
laws identified in paragraph 5 of the complaint herein, in that
she is a member of a protected group, African American woman over

-3-

1    forty (40) years of age.

2        13.   Plaintiff exhausted her administrative remedy before

3    filing her lawsuit herein.  Plaintiff filed an EEO complaint

4    (Agency No. 1F46-0020-03) dated March 14, 2003, alleging that she

5    was discriminated against by defendant on the bases of race

6    (African-American), disability (shoulders/back/rib/cage/emotional

7    distress), sex (female), age (D.O.B. 09/19/44), and in

8    retaliation for prior protected EEO activity when doing the acts

9    and failing to act as alleged herein.

10       14.   On May 26, 2005, plaintiff filed an appeal from the

11   agency's April 28, 2005 notice of action concerning her equal

12   employment opportunity (EEO) complaint alleging employment

13   discrimination in violation of Title VII of the Civil Rights Act

14   of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq.,

15   Section 501 of the Rehabilitation Act of 1973 (Rehabilitation

16   Act), as amended, 29 U.S.C. § 791 et seq., and the Age

17   Discrimination in Employment Act of 1967 (ADEA, as amended, 29

18   U.S.C. § 621 et seq.

19       15.   Defendant, engaged in a series of actions including but

20   not limited to the acts alleged herein, that were severe and

21   pervasive such as to created a hostile work environment for

22   plaintiff.  Defendants wrongful conduct toward plaintiff began

23   approximately in 2000 and continued until the present date.

24   Defendants conduct was motivated by race, sex, age, retaliation

25   and or disability and or perceived disability.

26       16.   Defendant, in doing the acts and failing to act, any of

27   the acts and all of the acts alleged herein, discriminated

28                                    -4-

1 || against plaintiff because of plaintiff's race.    Plaintiff is
2 || African American.

3    17.    Defendant, by acting and failing to act, engaged in
4 || conduct, including, but not limited to the acts alleged herein
5 || discriminated against plaintiff because of plaintiff's sex.
6 || Plaintiff is a female; and or plaintiff's age.    Plaintiff is 63
7 || years of age; and or plaintiff's disability and or her perceived
8 || disability.    Plaintiff is disabled because of her emotional and
9 || or mental state.    She is also disabled because of physical
10 || problems with her shoulders, rib cage and or back; and or
11 || retaliated against plaintiff because of plaintiff's prior
12 || protected EEO activity.    Plaintiff made prior EEO complaints
13 || about defendant.

14    18.    Plaintiff began working for United States Postal
15 || Service on or about September of 1986.    She satisfactorily
16 || performed all of her duties, and the conditions of her
17 || employment, with reasonable competence, consistent with the
18 || practices and policies of United States Postal Service, during
19 || the time of her employment.

20    19.    Defendant engaged in the following wrongful conduct of
21 || which plaintiff complains and contends created a hostile work
22 || environment for plaintiff and or discrimination:

23    On January 5, 2000, plaintiff reported to work as usual.
24 || She got out of her car in the parking lot, and she noticed as she
25 || was walking toward the building that the lighting was bad, and
26 || that the pavement felt as if it were slanting upward.    Plaintiff
27 || therefore walked cautiously.    As she was approaching the

28 ||

1  entrance, she tripped and fell, dropping all of her belongings.

2  She hurt her right side.  Two gentlemen helped her up, and she

3  went in to the building.  When she saw a Supervisor, she let him

4  know what happened.  The Supervisor filled out an incident

5  report.

6      On or about February 2, 200, plaintiff was issued a Letter

7  of Warning by supervisor Stanley Crump, dated January 30, 2000,

8  charging plaintiff with an Unsafe Act, referring to her fall in

9  the parking lot.  Plaintiff did not commit an unsafe act.

10  Plaintiff had never had an accident before.  The accident she had

11  on or about January 5, 2000 was not severe enough to warrant a

12  disciplinary letter of warning from defendant.  Defendant's

13  negligence substantially contributed to causing plaintiff's

14  accident.  Defendant was in control of the area where plaintiff

15  fell.  Defendant failed to maintain the area in a reasonably safe

16  condition.  The area had poor lighting and the pavement was not

17  level and defendant failed to warn plaintiff of the existing

18  dangerous condition.  Plaintiff filed a grievance regarding this

19  matter.  The union representative investigated the incident.  The

20  union's investigation revealed that the Letter of Warning issued

21  by defendant was unjustified because defendant's negligent

22  ownership, maintenance and training and failure to warn

23  substantially contributed to plaintiff's slip and fall accident.

24  The union verified that area where plaintiff fell was poorly lit.

25  The ground where she fell was a rough texture that grabbed at the

26  soles of her shoe, and the ground was not level.  The lighting at

27  the point where plaintiff fell is provided by 30 foot lamp posts,

28                              -6-

1 | approximately 75 feet apart, with five of the nine total lamps
2 | either permanently turned off or not functional.  Defendant had
3 | negligently failed to provide plaintiff with any safety training
4 | or to warn plaintiff about the dangerous condition where
5 | plaintiff fell.

6 | On or about November 1, 2001, Supervisor Vontina Swygert
7 | subjected plaintiff to physical and mental harassment.  Plaintiff
8 | was distributing mail the whole day, and Supervisor Swygert was
9 | directing her to do all of the mail by herself without any
10 | assistance, while all of the other employees wee going home.  She
11 | unreasonably stood over plaintiff and unreasonably watched
12 | plaintiff closely causing plaintiff to feel emotionally
13 | distressed and as though plaintiff was working in a hostile
14 | environment.  The mail involved mail that came in at the last
15 | minute, and plaintiff needed help with it.  Yet everyone else
16 | went home, and plaintiff was the only person who had to stay and
17 | work on the mail all alone.  Because plaintiff did not receive
18 | any help and had to hurry to finish the mail by herself, she was
19 | forced to work beyond her medical limitations.  The harassment by
20 | supervisor Swygert caused plaintiff to have an excruciating
21 | migraine headache, which forced plaintiff to take off work.

22 | On or about November 15, 2001, too much mail came in at the
23 | last minute for plaintiff to finish by herself.  Plaintiff asked
24 | Supervisor Chander Sharma for help with the mail, but he refused
25 | and left.  The last minute mail that plaintiff couldn't finish
26 | did not get distributed.  The supervisors got in trouble for
27 | this.  The next day, supervisor Swygert came in and accused

28 |

-7-

1  plaintiff of being at fault for this.  This upset plaintiff
2  greatly, as plaintiff had asked for help and did not receive any
3  help.  Plaintiff had done her best to finish the mail on time.
4  Plaintiff has medical limitations which her Supervisors are aware
5  of.  Supervisor Swygert's refusal at plaintiff's request for help
6  forced plaintiff to work beyond these limitations, and caused her
7  stress.  Supervisor Swygert's accusation further aggravated
8  plaintiffs stress. Defendant's conduct created a hostile work
9  environment for plaintiff.  There was not reason that plaintiff
10  should not have received help with the extra mail, as there were
11  many other employees present.

12      On or about January 27, 2002, Supervisor vontina Swygert
13  approached plaintiff and told her to go over and work the A
14  Frames, which are on carts and wheels and have shelves, and are
15  to be stacked with magazines and flats.  Plaintiff went over and
16  stacked it.  When she finished, the A Frames were full.  The
17  person plaintiff was working with, Camillio Marzan, and plaintiff
18  had to go get another one to fill up.  While they went to get
19  another A Frame, Supervisor Swygert was in a meeting with her
20  manager.  While she was in this meeting, she was watching
21  plaintiff through a window.  Later, Supervisor Swygert called
22  plaintiff to the office and asked plaintiff why plaintiff was up
23  walking around and not doing her job.  Mr. Marzan, who was doing
24  exactly the same thing as plaintiff, was not called into the
25  office.  This is disparate treatment.  Mr. Marzan is a different
26  race, national origin and sex from plaintiff.  He is a similarly
27  situated employee, who was performing the same task as plaintiff

28                              -8-

1  when plaintiff was wrongly accused of not doing her job.  Yet he
2  was not accused also.  Plaintiff was doing her job in a
3  satisfactorily manner.

4      On or about March 15, 2002, plaintiff was issued a Letter of
5  Warning (dated March 10, 2002) charging plaintiff with "Failure
6  to Follow Instructions/Failure to Adhere to Your Assigned Work
7  Schedule and to Clock In and Out in Conformance with Your Work
8  Schedule".  The letter of warning states the following as the
9  basis for the disciplinary action: "Specifically, on February 24,
10 2002, you did not return from lunch until 4:10 a.m. You clocked
11 out at 03:53 a.m. and back in at 04:04 a.m.  Your lunch schedule
12 was 03:50-04:00 a.m.

13     Plaintiff was working up until the time that she clocked out
14 for lunch on February 24, 2002.  She was completing necessary
15 tasks.  It is standard practice for employees to clock out at
16 irregular times, when the task they are working on is completed
17 or they come to a good place to stop work.  Plaintiff's coworkers
18 do this on a daily basis.  Plaintiff is informed and believes and
19 thereon alleges that she is the only person who was issued a
20 letter of warning for doing this.  By issuing this letter,
21 Supervisor Vontina Swygert continued her harassment and disparate
22 treatment against plaintiff.  In the letter of warning,
23 Supervisor Swygert threatened plaintiff with further disciplinary
24 action being taken against her, such as suspensions, reduction in
25 grade and/or pay, or removal from the Postal Service.  Her letter
26 and threats were unwarranted and caused plaintiff emotional and
27 physical distress.  Her harassment of plaintiff has created a

28                              -9-

1 | hostile work environment for plaintiff.

2 |    On or about March 30, 2002, plaintiff was issued a Letter of
3 | Warning by Supervisor Thomas dated March 22, 2002, for "Irregular
4 | Attendance/Tardiness/Unscheduled Absences". The "Letter of
5 | Warning" was unwarranted and unjustified. It was issued by
6 | defendant to harass plaintiff because of plaintiff's age, sex,
7 | and in retaliation against plaintiff for plaintiff's prior
8 | complaints of discrimination. Regarding the incidents of
9 | tardiness listed, plaintiff was experiencing physical and
10 | emotional medical problems due to the harassment and hostile work
11 | environment. Her medical and mental conditions, coupled with the
12 | medications she was required to take caused her to be late to
13 | work. Her medication would often make her drowsy and make it
14 | difficult to wake up. Further, her medical and mental conditions
15 | often interrupted her sleep. In the period of about six months,
16 | plaintiff was only late six times and all were due to effects of
17 | her medical conditions. Plaintiff provided defendant with a
18 | doctor's note for the absences of November 2-4, 2001. On
19 | December 9, 2001, and December 12, 2001, plaintiff was sick with
20 | the flue. She came to work whenever sh was physically able, and
21 | she never abused her sick leave. Plaintiff always provided an
22 | explanation to her Supervisor. Further, plaintiff's illness was
23 | exacerbated and or caused by defendant's harassment and hostile
24 | work environment created by defendant's conduct toward plaintiff.

25 |    On or about July 3, 2002, plaintiff received a "Letter of
26 | Warning" dated June 25, 2002, from Supervisor Vivian Thomas,
27 | charging plaintiff with Unsatisfactory Performance. The letter

28 |                                -10-

1 | states the following:

2 |     "On June 5, 2002, at approximately 3:30 a.m., you were sent
3 | to zone 18 to process letters.  Your case was checked at 4:45
4 | a.m., there were exactly fifteen (15) pieces of letter mail in
5 | the case, this is unacceptable performance."

6 |     "You were observed excessively walking around the unit,
7 | looking at labels, moving mail from place to place and sitting at
8 | the case staring into space as if asleep.  You frequently have
9 | problems with timely dispatching."

10 |     Plaintiff went and worked in the primary until Marsha,
11 | another Supervisor asked her to come up to the second floor to
12 | case mail in section 18 after lunch, around 3:30 a.m.  When she
13 | returned from lunch, it was approximately 3:35 a.m. Plaintiff was
14 | doing her work the entire time she was there, and this accusation
15 | is completely false.  Other employees do not receive unwarranted,
16 | unfounded Letters of Warning.  Plaintiff was issued the warning
17 | based upon discrimination.

18 |     On July 31, 2005, plaintiff was issued an unwarranted Letter
19 | of Warning y Supervisor Thomas.

20 |     On August 25, 2002, plaintiff was issued a "Notice of
21 | Suspension for Failure to Follow Instructions and Inappropriate
22 | Behavior/Unacceptable Conduct."  The Notice states in part:

23 |     "... on August 25, 2002, approximately 7:40 a.m. you were
24 | instructed to go to the Rockridge (94618) flat case and process
25 | flats.  You went back to the letter case and began to put trays
26 | on the pie cart and get labels.  When I approached you to find
27 | out why you were not following my instructions to case flats, you

28 | -11-

1   stated you were going to pull the letters first.  I then repeated
2   my instructions for you to go to Zone 94618 and process flats.  I
3   even pointed to the flat case 944618.  At that point you began to
4   scream.  "What do you want me to do?" over and over in a rage.
5   You failed to follow my initial , clear, precise instructions, to
6   process Zone 94618 flats.  When you were given an opportunity to
7   explain why you failed to follow my instructions from the 7:15
8   a.m., break with a u-cart of Letter trays, at that time you were
9   instructed not to go the letters bu to go to the flats.  You also
10  stated, "I didn't know what zone you wanted me to work."  I do
11  not find your reasons to be acceptable.  You failed to report to
12  either of your schemes, in a timely manner to process flats as
13  instructed."

14      This was a Sunday morning and the employees were getting
15  ready to go home.  On Sunday mornings, employees are rarely, if
16  ever, requested to work overtime.  Supervisor Vivian Thomas
17  informed the employees that they needed to stay.  Plaintiff asked
18  her "where is the mail that Ms. Thomas wanted them to do?"  Ms.
19  Thomas said "go to break for fifteen minutes and then come back
20  and I'll tell you."  The employees went on break and when they
21  returned, she was not in the unit.  Plaintiff began to ask
22  another employee what should they do?  They just started doing
23  the work that they had been doing.  Plaintiff began to pull down
24  some letters from the letter case.  She had to go get some trays
25  to put it in so she left the unit.  That is when Supervisor
26  Thomas returned to the unit and began to page plaintiff, loudly
27  and rudely.  Plaintiff immediately returned to her unit with the
28                              -12-

1   empty trays.  Plaintiff tried to explain to Supervisor Thomas
2   that she went to get trays because she was unsure what work
3   Supervisor Thomas wanted them to do.  Plaintiff began to put the
4   trays on the pie cart.  That is when Supervisor Thomas loudly and
5   rudely berated her.  Supervisor Thomas noticed that plaintiff was
6   still working on letters.  She again yelled at plaintiff, "didn't
7   I tell you to work on the flats?"  Plaintiff told her she didn't
8   know what flats or what side did she want her to do?  The Notice
9   of Suspension was a surprise.  Plaintiff felt that Supervisor
10  Thomas was being abusive, and was not interested in listening to
11  her.  Supervisor Thomas berated plaintiff in front of other
12  employees.  Her behavior was inappropriate, harassing and created
13  a hostile work environment.

14      In a Notice dated September 4, 002, plaintiff was issued a
15  Notice of Suspension for (05) Five Days for Failure to Follow
16  Instructions and Inappropriate Behavior/Unacceptable Conduct for
17  the incident described above.  Again, plaintiff felt that
18  Supervisor Thomas was being abusive, and was not interested in
19  listening to plaintiff.  Supervisor Thomas berated her in front
20  of other employees.  Her behavior was inappropriate and the
21  notice was unfounded.

22      On or about August 4, 2002, plaintiff received notification
23  that Vontina Swygert was requesting that plaintiff undergo
24  psychiatric fitness-for-duty .  Ms. Swygert made several false
25  statements about plaintiff's behavior.  The letter was
26  harassment.

27      On or about December 1, 2002, plaintiff was issued a Letter
28  -13-

1   of Warning-failure to follow instructions.  Plaintiff was
2   misquoted and falsely represented in the letter.

3        On or about January 1, 2003, Supervisor Thomas, harassed
4   plaintiff when she told plaintiff that she had no help for
5   plaintiff, and told plaintiff that she expected plaintiff to
6   finish the mail by herself, stood over plaintiff and yelled at
7   her and berated her in front of employees, pushed plaintiff to
8   work beyond her limitations and accused plaintiff of sleeping.
9   Plaintiff contends that Supervisor Thomas' adverse actions were
10  part of the hostile environment created by defendant, disparate
11  treatment, and continuing violations of harassment.

12       On or about February 27, 2003, plaintiff received an
13  unwarranted Notice of Fourteen Day Suspension for allege Failure
14  to Follow Instructions.  Vontina Swygert had been continuously
15  monitoring her closely, singling her out when other employees
16  were doing the same thing as plaintiff was doing.  The notice
17  stated that it was because plaintiff was not using her rest bar
18  correctly.  This disciplinary action is unwarranted and far too
19  harsh in relation to the alleged offense.  At that time
20  Supervisor Swygert was aware that plaintiff had filed an EEO
21  complaint against her.  Supervisor Swygert was retaliating
22  against plaintiff because of plaintiff's complaint of
23  discrimination.

24       On May 2, 2003, plaintiff was issued an unwarranted Notice
25  of suspension by an unspecified supervisor.  Plaintiff asserts
26  that the adverse action is part of the hostile environment,
27  disparate treatment and continuing violations of harassment.

28                              -14-

1      On or about September 18, 2003, plaintiff was issued an
2   unwarranted Letter of Warning charging plaintiff with Irregular
3   Attendance/Unscheduled Absences, Failure to follow Instructions.
4   Plaintiff asserts that the adverse action is part of the hostile
5   environment, disparate treatment and continuing violations of
6   harassment.

7      On or about October 18, 2003, plaintiff was called, into a
8   just cause meeting by Supervisor Sharma and reprimanded and
9   falsely accused concerning plaintiff work performance, due to her
10  disability.  As well as by letter dated November 7, 2003,
11  plaintiff receive a letter of suspension by supervisor Sharma,
12  after initiating her EEO pre-complaint by letter dated October
13  24, 2003.  Plaintiff asserts that the adverse action is part of
14  the hostile environment, disparate treatment, retaliation and
15  continuing violations of harassment.

16     On or about November 7, 2003, plaintiff was issued an
17  unwarranted 14 day suspension for alleged violation of step 2
18  settlement and unsatisfactory performance by supervisor Sharma.
19  Plaintiff asserts that the action is part of the hostile
20  environment, disparate treatment, retaliation and continuing
21  violations of harassment.

22     Beginning in approximately May or June of 2004, supervisor
23  Sharma would wait for plaintiff at the time clock and take her
24  purse and lunch and weigh them.  He did not do this to any other
25  employees.  Plaintiff asserts that this act is part of the
26  hostile environment, disparate treatment, retaliation and
27  continuing violations of harassment.

28                              -15-

1      20.   As a proximate cause of the alleged acts of defendant
2   and each of them, plaintiff has suffered emotional distress, loss
3   of income and will continue to suffer emotional distress, future
4   income loss, wage loss, and other incidental and out-of pocket
5   expenses, all to plaintiff's damage in an amount to be shown
6   according to proof. Plaintiff's claim for emotional distress is
7   $300,000.00 and continuing; her claim for loss of income is
8   estimated to be $10,000,00, and continuing; her claim for
9   punitive damages is estimated to be $600,000.00; her claim for
10   attorney fees is estimated to be $100,000.00.

11      21.   Defendant harassed plaintiff and or  discriminated
12   against plaintiff because of plaintiff's race, and or her sex,
13   and or age, and or disability and or perceived disability and or
14   in retaliation against her for her complaints of discrimination.

15      22.   Plaintiff hereby demands a jury trial.

16                        **FIRST CAUSE OF ACTION**
                **VIOLATION OF TITLE VII OF THE CIVIL RIGHTS**
17                      **ACT OF 1964, AS AMENDED**

18      23.   Plaintiff realleges and incorporates by reference
19   Paragraphs 1 through 22 of the Complaint as though fully set
20   forth at length herein.

21      24.   On a continuing basis, beginning approximately October
22   2000, plaintiff has been subjected to continuing violations of
23   harassment, disparate treatment, hostile work environment,
24   retaliation, violation of her medical restrictions, failure to be
25   provided with reasonable accommodations, unwarranted disciplinary
26   action and other acts made unlawful by the Title VII of the 1964
27   Civil Rights Act.  Additionally, defendants acts included but are

28                                 -16-

1  not limited to:

2      a. harassing plaintiff; engaging in severe and pervasive
3  unlawful conduct toward plaintiff such as to create a hostile
4  work environment for plaintiff because of plaintiff's race, and
5  or sex, and or age, and or disability and or perceived
6  disability, and or in retaliation against plaintiff for
7  plaintiff's complaints of discrimination;

8      b. discriminating against plaintiff in terms and conditions
9  of employment because of plaintiff's race, and or sex, and or
10  age, and or disability, and or perceived disability, and or in
11  retaliation against plaintiff for plaintiff's complaints of
12  discrimination;

13      c. failing to provide reasonable accommodations for
14  disability;

15      d. retaliation for prior complaints of discrimination;

16      e. failing to take all reasonable immediate and appropriate
17  corrective action to remedy the unlawful harassment, employment
18  discrimination and or retaliation;

19      f. failing to take all reasonable steps necessary to prevent
20  unlawful discrimination and or retaliation from occurring on the
21  job.

22      25.  In doing each and all of the acts alleged herein, said
23  defendants, intentionally, willfully, and without justification,
24  attempted to and did deprive Plaintiff of her rights, privileges
25  and immunities secured to her by the Constitution and laws of the
26  United States of America, particularly his right to be free from
27  discrimination and/or harassment in employment on the grounds of

28                              -17-

race as provided by Title VII of the 1964 Civil Rights Act as amended.

26.    Defendant's conduct and or the conduct of each defendant, alleged herein proximately cause plaintiff to lose income, and employment benefits, and suffer emotional distress, mental anguish, anxiety and worry, and incur attorney fees, and is reasonably certain to proximately cause plaintiff to lose income and suffer emotional distress, mental anguish, anxiety and worry, and incur attorney fees, in the future all to plaintiff's damage in an amount to be shown according to proof.

27.    The conduct of defendants, and each of them, alleged herein was willful, wanton, malicious, and oppressive, in that defendant knew or should have known that its conduct was unreasonable and or illegal.  Furthermore, defendant's acts were carried out in willful and conscious disregard of plaintiff's rights and well-being such as to constitute malicious, despicable conduct within the meaning of California Civil Code §3294, entitling plaintiff to punitive damages in an amount appropriate to punish or make an example of defendant.

**SECOND CAUSE OF ACTION**
**Section 501 of the Rehabilitation Act of 1973,**
**as amended**

28.    Plaintiff realleges, and incorporates by reference, Paragraphs 1 through 27 of the Complaint as though fully set forth at length herein.

**THIRD CAUSE OF ACTION**
**Age Discrimination in Employment Act of 1967,**
**as amended**

29.    Plaintiff realleges, and incorporates by reference,

-18-

Paragraphs 1 through 27 of the Complaint as though fully set forth at length herein.

**PRAYER**

**WHEREFORE**, Plaintiff prays for judgement against all Defendants, and each of them as follows:

1.    Compensatory and special damages, including damages for mental and emotional distress, in an amount to be determined at the time of trial, estimated at $300,000.00;

2.    Lost income, past and future, estimated at $20,000.00;

3.    Punitive and exemplary damages in an amount appropriate to punish and/or make an example of the Defendants sued individually herein to be determined at trial, estimated at $600,000.00;

4.    Reasonable attorney fees, estimated at $100,000.00;

5.    Costs of suit incurred herein, estimated at $3,000.00;

6.    Prejudgment interest at the legal rate on the amount of Plaintiff's lost wages and employment benefits; and

7.    Such other and further relief as the Court deems just and proper.


Dated: May 12, 2008        LAW OFFICES OF MICHAEL C. COHEN

By: _____
Michael C. Cohen,
Attorney for Plaintiff

-19-